# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DAVE LEVINTHAL, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civ. No. 15-1148 (JEB) |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | MOTION FOR |
| FEDERAL ELECTION COMMISSION, | ) | SUMMARY JUDGMENT |
| | ) | |
| Defendant. | ) | |

## DEFENDANT FEDERAL ELECTION COMMISSION'S
## MOTION FOR SUMMARY JUDGMENT

Defendant Federal Election Commission hereby moves this Court for an order granting summary judgment to the Commission pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7(h).  As discussed in the accompanying memorandum of points and authorities, the Commission has complied with its obligation under the Freedom of Information Act.  There are no material facts in dispute and the Commission is entitled to judgment in its favor as a matter of law.

A statement of material facts not in dispute and a proposed order are attached to the Commission's Memorandum.

Respectfully submitted,

Daniel A. Petalas (D.C. Bar No. 467908)
Acting General Counsel
dpetalas@fec.gov

Lisa J. Stevenson (D.C. Bar No. 457628)
Deputy General Counsel — Law
lstevenson@fec.gov

Kevin Deeley
Acting Associate General Counsel
kdeeley@fec.gov

Erin Chlopak (D.C. Bar No. 496370)
Acting Assistant General Counsel
echlopak@fec.gov

/s/ Greg J. Mueller
Greg J. Mueller (D.C. Bar No. 462840)
Attorney
gmueller@fec.gov

COUNSEL FOR DEFENDANT
FEDERAL ELECTION COMMISSION
999 E Street NW
Washington, DC 20463
(202) 694-1650

February 12, 2016

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DAVE LEVINTHAL, *et al.*, ) | |
| ) | |
| ) | |
| Plaintiffs, ) | Civ. No. 15-1148 (JEB) |
| ) | |
| ) | |
| v. ) | |
| ) | |
| ) | MEMORANDUM |
| FEDERAL ELECTION COMMISSION, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**FEDERAL ELECTION COMMISSION'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Daniel A. Petalas (D.C. Bar No. 467908)
Acting General Counsel

Lisa J. Stevenson (D.C. Bar No. 457628)
Deputy General Counsel — Law

Kevin Deeley
Acting Associate General Counsel

Erin Chlopak (D.C. Bar No. 496370)
Acting Assistant General Counsel

Greg J. Mueller (D.C. Bar No. 462840)
Attorney

FEDERAL ELECTION COMMISSION
999 E Street NW
Washington, DC 20463
(202) 694-1650

February 12, 2016

**TABLE OF CONTENTS**

BACKGROUND ........................................................................................................1

ARGUMENT ...........................................................................................................3

I.      STANDARD OF REVIEW ...............................................................................3

II.     THE PERSONAL CALENDARS OF THREE FEC COMMISSIONERS
ARE NOT "AGENCY RECORDS" SUBJECT TO DISCLOSURE
UNDER FOIA ...................................................................................................4

        A.      Judicial Authority to Order Disclosure Under FOIA is Limited to
Documents That Are "Agency Records" .............................................4

        B.      Agency Officials' Personal Scheduling Documents Are *Not*
Agency Records ..................................................................................5

               1.      Commissioner Hunter's Personal Calendar is
Not an Agency Record.............................................................8

               2.      Chairman Petersen's Personal Calendar is
Not an Agency Record.............................................................9

               3.      Vice Chairman Walther's Personal Calendar is
Not an Agency Record...........................................................10

III.    THE COMMISSION'S RESPONSE TO PLAINTIFFS'
FOIA REQUEST IS COMPLETE...................................................................12

CONCLUSION......................................................................................................13

i

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*Adionser v. Dep't of Justice,* 811 F. Supp. 2d 284 (D.D.C. 2011) ..........................................12

*Anguimate v. Dep't of Homeland Security,* 918 F. Supp. 2d 13 (D.D.C. 2013).......................4

*Bloomberg, L.P. v. SEC,* 357 F. Supp. 2d 156 (D.D.C. 2004)................................................11

*Brayton v. Office of the U.S. Trade Representative,* 641 F.3d 521 (D.C. Cir. 2011) ..............3

*Bureau of Nat'l Affairs, Inc. v. Dep't of Justice,*
    742 F.2d 1484 (D.C. Cir. 1984) ........................................................1, 5, 6, 7, 9, 10, 11, 12

*Burka v. Dep't of Health & Human Servs.,*
    87 F.3d 508 (D.C. Cir. 1996)..........................................................................5, 8, 9, 11

*Competitive Enter. Inst. v. NASA,* 989 F. Supp. 2d 74 (D.D.C. 2013) ..................................4, 5

*Consumer Fed'n of Am. v. Dep't of Agric.,*
    455 F.3d 283 (D.C. Cir. 2006)....................................................1, 4, 5, 6, 7, 8, 9, 10, 11, 12

*Dep't of Justice v. Reporters Comm. for Freedom of the Press,*
    489 U.S. 749, 755 (1989) ...........................................................................................4

*Dep't of Justice v. Tax Analysts,* 492 U.S. 136 (1989) ............................................................5

*Gallant v. NLRB,* 26 F.3d 168 (D.C. Cir.1994) ......................................................................4

*Judicial Watch, Inc. v. U.S. Secret Serv.,* 726 F.3d 208 (D.C. Cir. 2013) .............................12

*Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136 (1980) ...................12

*Perry v. Block,* 684 F.2d 121 (D.C. Cir. 1982) ......................................................................12

*Richardson v. U.S. Dep't of Justice,* 730 F. Supp. 2d 225 (D.D.C. 2010).............................12

*SafeCard Servs., Inc. v. SEC,* 926 F.2d 1197 (D.C. Cir. 1991) .............................................4

*Tax Analysts v. Dep't of Justice,* 845 F.2d 1060 (D.C. Cir. 1988) .......................................5, 9

*Tijerina v. Walters,* 821 F.2d 789 (D.C. Cir. 1987)...............................................................12

*Voinche v. FBI,* 999 F.2d 962 (5th Cir. 1993) .......................................................................12

*Statutes*

52 U.S.C. §§ 30101-30146 ......................................................................................................1

5 U.S.C. § 552 ..........................................................................................................................1

5 U.S.C. § 552(a)(4)(B) ...........................................................................................................4

The Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, establishes a statutory right of public access to documents and records of federal agencies.  It does not grant the public a right to examine the personal records of agency officials.  Plaintiffs Dave Levinthal and the Center for Public Integrity contest a narrow aspect of the Federal Election Commission's ("FEC" or "Commission") response to their FOIA request for scheduling documents and records used by FEC Commissioners.  Specifically, plaintiffs ask this Court to decide whether certain Commissioners' personal calendars are subject to disclosure under FOIA.  As detailed below, the Commission has complied with plaintiffs' FOIA request and completed its production of 1100 pages of non-exempt, responsive scheduling documents.  Plaintiffs apparently believe that the Commission possesses responsive calendars used by three Commissioners that have been improperly withheld.  Those Commissioners' personal calendars are not agency records.

The question of whether agency officials' personal calendars are "agency records" subject to FOIA is well settled in this Circuit.  In at least two separate cases, the Court of Appeals has squarely held that an agency official's personal calendar is not an "agency record" subject to disclosure under FOIA.  *See Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283 (D.C. Cir. 2006); *Bureau of Nat'l Affairs, Inc. v. Dep't of Justice*, 742 F.2d 1484 (D.C. Cir. 1984).  Those cases control the outcome of this narrow dispute and confirm that the Commission is entitled to summary judgment and this case should be dismissed.

## BACKGROUND

The Commission is the independent agency of the United States government with exclusive jurisdiction over the administration, interpretation, and civil enforcement of the Federal Election Campaign Act ("FECA"), codified at 52 U.S.C. §§ 30101-30146 (formerly 2 U.S.C. §§ 431-457).

Plaintiffs Dave Levinthal and the Center for Public Integrity requested through FOIA:

> all scheduling documents and/or records — be them in paper or electronic form — used by FEC commissioners.
> Such documents should include, but not be limited to, calendars, schedules, emails, and itineraries that list or account for commissioners' meetings, whereabouts or travels when conducting government business or traveling to/from engagements or duties involving government business.

Plaintiffs' FOIA request sought the above-described documents within the timeframe October 21, 2013 through August 14, 2014.  (Decl. of Katie A. Higginbothom ¶ 2, Feb. 10, 2016.)

The Commission complied with plaintiffs' FOIA request, releasing a total of 1100 pages of non-exempt, responsive Commissioner scheduling documents, or the non-exempt portions of such scheduling documents.  The Commission completed its release of non-exempt, responsive agency records on October 14, 2015.  (Higginbothom Decl. ¶ 8.)

On July 20, 2015, after the Commission had produced one batch of non-exempt, responsive agency records, plaintiffs filed this FOIA action.  The Commission completed its production of non-exempt records a few months later.  Plaintiffs' complaint asked the Court, *inter alia*, to order the Commission "to make the requested records available to Plaintiffs." (Compl. Demand for Relief ¶ 2.)

As described in the parties' joint filings regarding the status of the underlying FOIA request and the summary judgment briefing schedule (Docket Nos. 9, 11), between October and December 2015, the parties worked together to identify and narrow the scope of any questions the plaintiffs had regarding the Commission's response to their FOIA request.  (Decl. of Greg J. Mueller ¶ 5, Feb. 12, 2016.)  Most relevant here, the FEC confirmed, in response to the plaintiffs' specific inquiry, that "[n]either Commissioner Hunter, nor Commissioner Walther, nor

Vice Chair Petersen maintains a calendar that constitutes an agency record subject to FOIA."[1] (Mueller Decl. ¶ 6; Letter from Greg J. Mueller to Peter Newbatt Smith (Dec. 4, 2015), attached as Exh. A to Mueller Decl.; *see also infra* pp. 8-12.)

The parties resolved most of the disputed issues related to the plaintiffs' FOIA request during their negotiations.  (Mueller Decl. ¶ 7.)  On December 10, 2015, counsel for the plaintiffs clarified that plaintiffs are seeking judicial review of only one remaining issue in this case: whether the Commission improperly withheld any calendars or other "scheduling information" that are used by Commissioner Hunter, Chairman Petersen, or Vice Chairman Walther and qualify as "agency records."  (*Id.* ¶ 7; Email from Peter Newbatt Smith to Greg J. Mueller (Dec. 10, 2015), attached as Exh. B. to Mueller Decl. ("Smith Email (Dec. 10, 2015)").)  Plaintiffs' counsel further clarified that the plaintiffs "will not seek judicial review" concerning other aspects of the Commission's FOIA response, and proposed that the parties' summary-judgment briefing should be "limited to responsive records concerning those three commissioners." (Smith Email (Dec. 10, 2015).)

## ARGUMENT

## I.        STANDARD OF REVIEW

FOIA matters are typically resolved on motions for summary judgment.  *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).  Where, as here, the FOIA dispute concerns the fundamental question of whether certain documents sought are "agency records" subject to disclosure under FOIA, the issue before the court is "whether the

---

[1]        At the end of 2015, the Commission elected Commissioner Matthew Petersen to serve as Chairman of the agency and Commissioner Steven Walther to serve as Vice Chairman. Except where quoting earlier references to the Commissioners, this Brief refers to Chairman Petersen and Vice Chairman Walther by their current titles.

agency has sustained its burden of demonstrating that the documents requested are not 'agency records.'" *Consumer Fed'n of Am.*, 455 F.3d at 287 (quoting *Gallant v. NLRB,* 26 F.3d 168, 171 (D.C. Cir.1994)).

"Under FOIA, '[s]ummary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.'" *Id.* (quoting *Gallant*, 26 F.3d at 171).

"Agency affidavits submitted in the FOIA context are . . . 'accorded a presumption of good faith.'" *Anguimate v. Dep't of Homeland Security*, 918 F. Supp. 2d 13, 17 (D.D.C. 2013) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

In a case brought under FOIA seeking to enjoin an agency from withholding a purported agency record, the district court "shall determine the matter de novo."  5 U.S.C. § 552(a)(4)(B); *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989).

## II.     THE PERSONAL CALENDARS OF THREE FEC COMMISSIONERS ARE NOT "AGENCY RECORDS" SUBJECT TO DISCLOSURE UNDER FOIA

### A.     Judicial Authority to Order Disclosure Under FOIA is Limited to Documents That Are "Agency Records"

"A document is subject to disclosure under the FOIA only if it is an 'agency record.'" *Competitive Enter. Inst. v. NASA*, 989 F. Supp. 2d 74, 85 (D.D.C. 2013) (quoting 5 U.S.C. § 552(a)(4)(B)).  As the Court of Appeals for the D.C. Circuit has correspondingly recognized, "FOIA grants the district court 'jurisdiction to enjoin [an] agency from withholding *agency records* and to order the production of any *agency records* improperly withheld from the complainant.'" *Consumer Fed'n of Am.*, 455 F.3d at 286 (citing 5 U.S.C. § 552(a)(4)(B); emphasis added)).  By definition, such jurisdiction is limited to documents that qualify as

4

"agency records," *i.e.*, documents that are created or obtained by the agency, and over which the agency exercises control "in the sense that [the documents] 'have come into the agency's possession in the legitimate conduct of its official duties.'"  *Id.* at 287 n.7 (quoting *Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 144-45 (1989)).  Courts lack jurisdiction under FOIA to require disclosure of documents that are *not* agency records.

Courts in this Circuit apply a "totality of the circumstances test to distinguish 'agency records' from personal records."  *Id.*  The test focuses on "'factors surrounding the creation, possession, control, and use of the document by the agency.'"  *Id.* (quoting *Bureau of Nat'l Affairs, Inc. v. Dep't of Justice*, 742 F.2d 1484, 1490 (D.C. Cir. 1984)).  Specifically, courts in this Circuit determine whether a document is an agency record by evaluating "'(1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files.'"  *Burka v. Dep't of Health & Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996) (quoting *Tax Analysts v. Dep't of Justice*, 845 F.2d 1060, 1069 (D.C. Cir. 1988), *aff'd*, 492 U.S. 136 (1989)); *see Consumer Fed'n of Am.*, 455 F.3d at 287 n.7 (same). In considering these factors, courts are mindful of the Supreme Court's clarification that "'the term 'agency records' is not so broad as to include personal materials in an employee's possession, even though the materials may be physically located at the agency.'"  *Competitive Enter. Inst.*, 989 F. Supp. 2d at 85 (quoting *Tax Analysts*, 492 U.S. at 145).

### B.     Agency Officials' Personal Scheduling Documents Are *Not* Agency Records

In two separate cases, the D.C. Circuit Court of Appeals has applied the totality of the circumstances test to the specific context at issue here, agency officials' scheduling documents.

*Consumer Fed'n of Am.*, 455 F.3d 287; *Bureau of Nat'l Affairs*, 742 F.2d 1484.  The two decisions define the circumstances that distinguish an agency official's personal calendar from a calendar that constitutes an "agency record."

In *Bureau of National Affairs*, the Court of Appeals considered whether two different types of scheduling documents — desk appointment calendars and daily agendas — used by a former Assistant Attorney General for Antitrust constituted "agency records" subject to disclosure under FOIA.  742 F.2d at 1487, 1494-96.  The desk appointment calendars contained entries reflecting "the location of a meeting or appointment, the people expected to be present, and on occasion, the general purpose of the meeting or appointment."  *Id.* at 1487.  The daily agendas similarly reflected the same official's "schedule on a given day."  *Id.*  Both sets of scheduling documents also included entries related to the official's personal appointments.  *Id.* at 1487, 1496.

The Court determined whether each set of scheduling documents were "agency records" by evaluating how such documents were "used within the agency."  *Id.* at 1495.  The Court held that the official's desk appointment calendars, which were retained "solely for the convenience of the individual officials" to organize his "personal and business appointments," and "were not distributed to other employees," were personal records and not "agency records" covered by FOIA.  *Id.* at 1496.  The fact that the official's principal assistants "occasionally had access to the calendars," did not alter the personal nature of such documents.  *Id.* at 1487.

By contrast, the Court held that the same official's daily agendas, which served "to inform the staff of [the official's] availability" and "facilitated the day-to-day operations" of his office, and which were "distributed to top staff [throughout the Department of Justice's]

Antitrust Division so that they would know [the official's] schedule on a given day," were "agency records" subject to disclosure under FOIA.  *Id.* at 1487, 1495-96.

Two decades later, in *Consumer Federation of America*, the Court of Appeals described its analysis from *Bureau of National Affairs* as a "template" for drawing distinctions between the calendars of several different agency officials.  455 F.3d at 288.  The Court in *Consumer Federation of America* explained that all of the calendars at issue in that case "'were generated within the agenc[y]' and 'were prepared on government time, at government expense and with government materials, including the . . . appointment calendar[]' software itself."  *Id.* at 289 (quoting *Bureau of Nat'l Affairs*, 742 F.2d at 1494).  The "technologically savvy [agency] officials kept their calendars 'on the [agency's] computer system, thus necessarily subjecting them to the control of that system's administrators."  *Id.* at 290 (internal citation omitted).

Notwithstanding these general characteristics applicable to all of the calendars at issue in *Consumer Federation of America*, the Court of Appeals once again focused on the manner in which the calendars were used as the basis for determining whether the calendars were "agency records" covered by FOIA.  The Court held that officials' calendars that "were used to 'better communicate about [the officials'] availability, to prevent, among other things, double booking of periods of time,'" that were "distributed" to other senior agency staff, and that were "relied upon by both their authors and their authors' colleagues to 'facilitate[] the day-to-day operations'" of the agency, *were* "agency records" subject to disclosure under FOIA.  *Id.* at 291-93.[2]

---

[2]      Rather than the physical distribution of paper copies of the calendars, electronic versions of the calendars were "simply made available on the recipients' computers."  *Consumer Fed. of Am.*, 455 F.3d at 291-92.  The Court of Appeals found that any such distinctions in how access was provided to calendars were unimportant.  *Id*.

The Court distinguished one official's calendar, "which provide[d] a counterpoint to the above analysis." *Id.* at 293. Although this official, like his colleagues, also "distributed" his calendar "to better communicate about [his] availability,' he distributed it only to his 'secretary and any temporary secretaries that filled in for [his] permanent secretary.'" *Id.* Because the calendar "was 'not *distributed* to other employees,'" and there was no evidence that other employees "apart from [the official's] secretary" relied on the calendar, the Court concluded that the calendar was *not* an agency record. *Id.*

As detailed below, the controlling analyses in *Consumer Federation of America* and *Bureau of National Affairs* confirm that the personal calendars maintained by Commissioner Hunter, Chairman Petersen, and Vice Chairman Walther are not agency records.

### 1.        Commissioner Hunter's Personal Calendar is Not an Agency Record

The FEC properly excluded Commissioner Hunter's personal calendar book from its production of documents responsive to plaintiffs' FOIA request. Commissioner Hunter purchased the book with her own personal funds, maintained it "for her own personal use and benefit," and generally kept in her purse. (Decl. of Caroline C. Hunter ¶ 3, Feb. 11, 2016.) She alone used the calendar book to keep track of her personal, social, and professional appointments. (*Id.* ¶¶ 3-4.) No member of her staff or other FEC employee made entries in, consulted, or otherwise had access to Commissioner Hunter's personal calendar book. (*Id.* ¶ 4.)

Under the totality of the circumstances test, Commissioner Hunter's personal calendar book plainly is not an agency record. *See Burka*, 87 F.3d at 515; *Tax Analysts*, 845 F.2d at 1069; *Consumer Fed'n of Am.*, 455 F.3d at 287; *Bureau of Nat'l Affairs*, 742 F.2d at 1487, 1496. By purchasing it with her own personal funds and using it exclusively, Commissioner Hunter manifestly intended to retain control over it. *Burka*, 87 F.3d at 515. The Commission does not

have any ability to use or dispose of the calendar. *Id.*  No other agency personnel read or made

any use whatsoever of the scheduling document. *Id.*  The calendar never resided in agency files,

and it contained scheduling information for Commissioner Hunter alone. *Id.*  The controlling

analyses in *Consumer Federation of America* and *Bureau of National Affairs* make clear that

Commissioner Hunter's calendar is a personal record that is not responsive to plaintiffs' FOIA

request.  Indeed, Commissioner Hunter's calendar is even more clearly outside the scope of

FOIA than the scheduling records the Court of Appeals found to be properly withheld in both of

those cases. *See Consumer Fed'n of Am.*, 455 F.3d at 287-88, 293; *Bureau of Nat'l Affairs*, 742

F.2d at 1487, 1496.

> ### 2.         Chairman Petersen's Personal Calendar is Not an Agency Record

The Commission also properly excluded from its FOIA production the personal calendar

Chairman Petersen maintained on his personal tablet computer.  He purchased the tablet with his

own personal funds and maintained it for his "own personal use and benefit." (Decl. of Matthew

S. Petersen ¶ 3, Feb. 11, 2016.)  Chairman Petersen used the electronic calendar to keep track of

personal, social, and professional appointments.  (*Id.*)  He had exclusive access to the calendar;

no member of his staff or other FEC employee made entries in, consulted, or otherwise had

access to his personal calendar.  (*Id.* ¶ 4.)

The totality of the circumstances surrounding the creation, possession, control, and use of

Chairman Petersen's calendar similarly confirm that Chairman Petersen's calendar is not an

agency record. *See Burka*, 87 F.3d at 515; *Tax Analysts*, 845 F.2d at 1069; *Consumer Fed'n of

Am.*, 455 F.3d at 287 n.7; *Bureau of Nat'l Affairs*, 742 F.2d at 1487, 1496.  Chairman Petersen's

disbursement of his own funds and exclusive use confirm his intent to retain control over the

tablet. *Burka*, 87 F.3d at 515.  The agency has no ability to use or dispose of Commissioner

Petersen's personal tablet, and other agency personnel do not read or rely upon the tablet.  *Id.*
The tablet is in no manner integrated into the Commission's record system.  *Id.  Consumer
Federation of America* and *Bureau of National Affairs* thus similarly confirm that Chairman
Petersen's calendar is a personal rather than agency record and not responsive to plaintiffs' FOIA
request.  And like Commissioner Hunter's calendar, Chairman Petersen's calendar is more
distinctly outside the scope of FOIA than the scheduling records the Court of Appeals declined
to order released in those two cases.  *See Consumer Fed'n of Am.*, 455 F.3d at 288, 293; *Bureau
of Nat'l Affairs*, 742 F.2d at 1487, 1496.

> **3.    Vice Chairman Walther's Personal Calendar is Not an Agency Record**

Finally, the Commission also properly excluded from its FOIA production the personal
electronic calendar that Vice Chairman Walther maintained on a restricted agency network folder
for his own "personal use and benefit."  (Decl. of Steven T. Walther  ¶ 3, Feb. 11, 2016.)  Vice
Chairman Walther personally used the electronic calendar to keep track of personal and
professional appointments and travel plans.  (*Id.*)  He did not distribute the calendar to FEC staff,
although one of his two executive assistants accessed the calendar to perform secretarial duties of
updating and printing the calendar, exclusively at Vice Chairman Walther's direction, for the
Commissioner's own personal use.  (*Id.*)

The circumstances surrounding the creation, possession, control, and use of Vice
Chairman Walther's electronic personal calendar are nearly identical to the circumstances that
rendered certain scheduling records in *Consumer Federation of America* and *Bureau of National
Affairs* outside the scope of FOIA.  *See Consumer Fed'n of Am.*, 455 F.3d at 288, 293; *Bureau of
Nat'l Affairs*, 742 F.2d at 1487, 1494.  Limiting access to his immediate staff and maintaining his
electronic calendar on a restricted network folder establish that Vice Chairman Walther did not

10

intend to relinquish control over his calendar.  Walther Decl. ¶ 3; *Burka*, 87 F.3d at 515.  The

agency is not asserting an absolute right to use and dispose of materials in Commissioners'

restricted office folders, and only Vice Chairman Walther and his two executive assistants read

or relied upon the document.  (Walther Decl. ¶ 4.)  The calendar document is not integrated into

the rest of the Commission's record system in any meaningful way.  (*Id.* ¶ 3.)

Courts have consistently found that calendar records in comparable circumstances were

not agency records.  *See Consumer Fed'n of Am.,* 455 F.3d at 293 (concluding that an agency

official's sharing of his electronic calendar with his administrative support staff was insufficient

to render a calendar an agency record); *see also, e.g.*, *Judicial Watch, Inc. v. U.S. Secret Serv.*,

726 F.3d 208, 220 n.13 (D.C. Cir. 2013) (citing D.C. Circuit's holding in *Consumer Federation*

*of America* "that an employee's personal electronic calendar was not an agency record,

notwithstanding that it was on the agency's computer system"); *Bloomberg, L.P. v. SEC*, 357 F.

Supp. 2d 156, 163-67 (D.D.C. 2004) (concluding that computer calendar, telephone logs, and

message slips of SEC Chairman, and meeting notes of Chairman's chief of staff, were personal

records where they were created for personal use of Chairman or chief of staff, were not

incorporated into SEC files, and were not under SEC control, even though some records were

maintained by SEC personnel and were automatically "backed-up" onto SEC computer server).

Much like the calendars that the Court of Appeals found to be outside the scope of FOIA

in *Consumer Federation of America* and *Bureau of National Affairs*, Vice Chairman Walther's

calendar was not "distributed" to agency employees, and access to the calendar was limited to

the Commissioner's personal assistants to assist with maintaining and updating the calendar

solely for Vice Chairman Walther's use.  *See Consumer Fed'n of Am.*, 455 F.3d at 288, 293;

11

*Bureau of Nat'l Affairs*, 742 F.2d at 1487, 1496.  The personal record is not subject to FOIA and was properly withheld from the Commission's response to plaintiffs' FOIA request.

## III.    THE COMMISSION'S RESPONSE TO PLAINTIFFS' FOIA REQUEST IS COMPLETE

When a Court determines that an agency has released all non-exempt material responsive to a FOIA request, it has "no further judicial function to perform under the FOIA."  *Richardson v. Dep't of Justice*, 730 F. Supp. 2d 225, 232 (D.D.C. 2010) (quoting  *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982)); *Adionser v. Dep't of Justice*, 811 F. Supp. 2d 284, 294 n.11 (D.D.C. 2011).  Because the Commission has fully responded to plaintiffs' FOIA request and confirmed to the plaintiffs that none of the three Commissioners identified by plaintiffs maintains a calendar that constitutes an agency record, *supra* pp.2-3, FOIA provides no further role for the Court.  As explained above, *supra* pp. 2-3, plaintiffs are not challenging the adequacy of the Commission's search for responsive records.  The Commission is thus entitled to judgment in its favor and this case should be dismissed.[3]

---

[3]      For similar reasons, the Court may also dismiss this case on jurisdictional grounds.  A FOIA suit cannot proceed unless the plaintiff can show that an agency has improperly withheld agency records.  *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980).  Where, as here, the agency establishes that responsive records have been released to the requester, the suit may be dismissed on mootness grounds as there is no justiciable case or controversy.  *Voinche v. FBI*, 999 F.2d 962, 963 (5th Cir. 1993) (per curiam) (holding that plaintiff's "claim was rendered moot by the FBI's response to his request.").  *See also Tijerina v. Walters*, 821 F.2d 789, 799 (D.C. Cir. 1987) (holding case is moot because "the agency by now has released all nonexempt materials the [plaintiffs] seek.").

## CONCLUSION

For all the foregoing reasons the Court should grant the Commission's Motion for

Summary Judgment and dismiss plaintiffs' complaint.

Respectfully submitted,

Daniel A. Petalas (D.C. Bar No. 467908) Erin Chlopak (D.C. Bar No. 496370)
Acting General Counsel Acting Assistant General Counsel
dpetalas@fec.gov echlopak@fec.gov

Lisa J. Stevenson (D.C. Bar No. 457628) /s/ Greg J. Mueller
Deputy General Counsel — Law Greg J. Mueller (D.C. Bar No. 462840)
lstevenson@fec.gov Attorney
 gmueller@fec.gov

Kevin Deeley
Acting Associate General Counsel COUNSEL FOR DEFENDANT
kdeeley@fec.gov FEDERAL ELECTION COMMISSION
 999 E Street NW
 Washington, DC 20463
 (202) 694-1650

February 12, 2016

13

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DAVE LEVINTHAL, *et al.*,       ) | |
|       ) | |
| Plaintiffs,       ) | Civ. No. 15-1148 (JEB) |
|       ) | |
|       ) | |
| v.       ) | |
|       ) | |
|       ) | STATEMENT OF |
| FEDERAL ELECTION COMMISSION,       ) | MATERIAL FACTS |
|       ) | |
| Defendant.       ) | |
|       ) | |

**DEFENDANT FEDERAL ELECTION COMMISSION'S**
**STATEMENT OF MATERIAL FACTS AS TO**
**WHICH THERE IS NO GENUINE DISPUTE**

Pursuant to Federal Rule of Civil Procedure 56(c) and Local Civil Rule 7(h)(1), the

Federal Election Commission ("FEC") submits the following Statement of Material Facts as to

Which There is No Genuine Dispute:

1.    The FEC is the independent agency of the United States government with

exclusive jurisdiction over the administration, interpretation, and civil enforcement of the

Federal Election Campaign Act ("FECA"), 52 U.S.C. §§ 30101-30146.

2.    Pursuant to the Freedom of Information Act ("FOIA"), plaintiffs Dave Levinthal

and the Center for Public Integrity requested of the FEC:

> all scheduling documents and/or records — be them in paper or electronic
> form — used by FEC commissioners.  Such documents should include,
> but not be limited to, calendars, schedules, emails, and itineraries that list
> or account for commissioners' meetings, whereabouts or travels when
> conducting government business or traveling to/from engagements or
> duties involving government business.

(Decl. of Katie A. Higginbothom ¶ 2, Feb. 10, 2016; *see also* Compl. ¶ 8.)  Plaintiffs' FOIA request sought the above-described documents within the timeframe October 21, 2013 through August 14, 2014. (Higginbothom Decl. ¶ 2*;* Compl. ¶ 8.)

3.     The Commission complied with plaintiffs' FOIA request, releasing a total of 1100 pages of non-exempt, responsive Commissioner scheduling documents, or the non-exempt portions of such scheduling documents.  The Commission completed its production of all non-exempt documents and non-exempt portions of documents responsive to the FOIA request on October 14, 2015.  (Higginbothom Decl. ¶ 8.)

4.     On July 20, 2015, after the Commission had produced one batch of non-exempt, responsive agency records, plaintiffs filed this FOIA action.  The Commission completed its production of non-exempt responsive FEC records a few months later.  Plaintiffs' complaint asked the Court, *inter alia*, to order the Commission "to make the requested records available to the Plaintiffs."  (Compl. Demand for Relief ¶ 3.)

5.     Between October and December 2015, the parties worked together to identify and narrow the scope of any questions the plaintiffs had regarding the Commission's response to their FOIA request.  (Decl. of Greg J. Mueller ¶ 5, Feb. 11, 2016.)  During that time, the FEC confirmed, in response to the plaintiffs' specific inquiry, that "[n]either Commissioner Hunter, nor Commissioner Walther, nor Vice Chair Petersen maintains a calendar that constitutes an agency record subject to FOIA."  (Mueller Decl. ¶ 6 & Exh. A (Letter from Greg J. Mueller to Peter Newbatt Smith (Dec. 4, 2015)).)

6.     The parties resolved most of the disputed issues related to the plaintiffs' FOIA request during their Fall 2015 negotiations.  (Mueller Decl. ¶ 7.)  On December 10, 2015, counsel for the plaintiffs clarified that plaintiffs are seeking judicial review of only one

remaining issue in this case:  whether the Commission improperly withheld any calendars or other "scheduling information" that are used by Commissioner Hunter, Chairman Petersen, or Vice Chairman Walther and qualify as "agency records."  (Mueller Decl. ¶ 7 & Exh. B (Email from Peter Newbatt Smith to Greg J. Mueller (Dec. 10, 2015)).)  Plaintiffs' counsel further clarified that the plaintiffs "will not seek judicial review" concerning other aspects of the Commission's FOIA response, and proposed that the parties' summary-judgment briefing should be "limited to responsive records concerning those three commissioners."  (Mueller Decl. Exh. B.)

 7. Commissioner Hunter did not maintain an office calendar during the time period covered by plaintiffs' FOIA request.  (Decl. of Caroline C. Hunter ¶ 5, Feb. 11, 2016.)

 8. Commissioner Hunter did maintain a personal calendar book, which is not an FEC record.  Commissioner Hunter purchased the calendar book with her own personal funds, maintained it for her own personal use and benefit, and generally kept it in her purse.  (Hunter Decl. ¶ 3.)  Commissioner Hunter alone used the calendar book to keep track of her personal, social, and professional appointments.  (*Id.* ¶ 3.)  No member of her staff or other FEC employee made entries in, consulted, or otherwise had access to Commissioner Hunter's personal calendar book.  (*Id.* ¶ 4.)

 9. During the relevant time period, Commissioner Hunter occasionally received notifications of internal meetings through the FEC's Lotus Notes software but she otherwise made no use of any calendar functions of that software.  (Hunter Decl. ¶ 5.)

 10. Chairman Petersen did not maintain an office calendar during the time period covered by plaintiffs' FOIA request.  (Decl. of Matthew S. Petersen ¶ 5, Feb. 11, 2016.)

11.     Chairman Petersen did maintain a personal tablet computer that contained a personal calendar, which is not an FEC record.  Chairman Petersen purchased the tablet with his own personal funds and maintained it for his own personal use and benefit.  (Petersen Decl. ¶ 3.) Chairman Petersen used the electronic calendar on his tablet to keep track of personal, social, and professional appointments.  (*Id.* ¶ 3.)  He had exclusive access to the calendar; no member of his staff or other FEC employee made entries in, consulted, or otherwise had access to his personal calendar.  (*Id.* ¶ 4.)

12.     During the relevant time period, Chairman Petersen occasionally received notifications of internal meetings through the FEC's Lotus Notes software but he otherwise made no use of any calendar functions of that software.  (Petersen Decl. ¶ 5.)

13.     During the time period covered by plaintiffs' FOIA request, Vice Chairman Walther maintained a personal office calendar for his own personal use and benefit.  (Decl. of Steven T. Walther ¶ 3, Feb. 11, 2016.)  Vice Chairman Walther personally used the electronic calendar to keep track of personal and professional appointments and travel plans.  (*Id.*)  He maintained the calendar in a restricted folder on an FEC server that is designed for exclusive use by Vice Chairman Walther and his immediate personal staff.  (*Id.*)  Other than potential maintenance work by network administrators from the FEC's information technology staff, the only people who had access to the restricted folder — including Vice Chairman Walther's personal calendar — during the relevant time period were Vice Chairman Walther and the two executive assistants that worked for him during that time period.  (*Id.*)  One of Vice Chairman Walther's two executive assistants previously performed the secretarial duties of periodically updating and printing the calendar for his personal use, at his direction, which duties amounted to no more than a few minutes per month.  (*Id.*)  Printed copies of the calendar, if any, were

4

maintained in a bookshelf outside Vice Chairman Walther's individual office door within the three-room suite of offices for his staff.  (*Id.*)  Any such paper copies were destroyed at the end of each month.  (*Id.*)  No one outside of Vice Chairman Walther's personal staff accessed or consulted the electronic or print version of the calendar in order to avoid scheduling conflicts, or for any other purpose.  (*Id.*)

14.     During the relevant time period, Vice Chairman Walther occasionally received notifications of internal meetings through the agency's Lotus Notes software but he otherwise made no use of any calendar functions of that software.  (Walther Decl. ¶ 5.)  The FEC's Lotus Notes email and calendar software is completely independent of Vice Chairman Walther's personal calendar and was not used to populate any entries in that calendar.  (*Id.*)

15.     The FEC has fully responded to plaintiffs' FOIA request.  Neither Commissioner Hunter, nor Vice Chairman Walther, nor Chairman Petersen maintains a calendar that constitutes an agency record.

Respectfully submitted,

Daniel A. Petalas (D.C. Bar No. 467908)          Erin Chlopak (D.C. Bar No. 496370)
Acting General Counsel                           Acting Assistant General Counsel
dpetalas@fec.gov                                 echlopak@fec.gov

Lisa J. Stevenson (D.C. Bar No. 457628)          /s/ Greg J. Mueller
Deputy General Counsel — Law                     Greg J. Mueller (D.C. Bar No. 462840)
lstevenson@fec.gov                               Attorney
                                                 gmueller@fec.gov
Kevin Deeley
Acting Associate General Counsel                 COUNSEL FOR DEFENDANT
kdeeley@fec.gov                                  FEDERAL ELECTION COMMISSION
                                                 999 E Street NW
                                                 Washington, DC 20463
                                                 (202) 694-1650